2012-1300
(Serial No. 10/984,186)

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
————————————————————

IN RE JAMES W. BIONDI AND AARON FAND
(**Real Party in Interest Cardiopulmonary Corporation**)

Appeal from the United States Patent and Trademark Office,
Board of Patent Appeals and Interferences.

BRIEF FOR APPELLEE DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE

RAYMOND T. CHEN
Solicitor

MEREDITH H. SCHOENFELD
ROBERT J. MCMANUS
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
*Attorneys for the Director*
*of the United States Patent and*
*Trademark Office*

August 16, 2012

Representative Claim:

17. A medical device monitoring system comprising:

a plurality of medical devices, wherein at least two of said medical devices are heterogeneous types, said medical devices having data;

a first network access point in communication with one of said plurality of medical devices, said first network access point passing requests to and receiving data from said one of said plurality of medical devices;

a network in communication with said first network access point;

a second network access point in communication with said network;

a server in communication with said second network access point, said server comprising:

a dedicated medical device application program for each type of heterogeneous medical devices;

a listener/pollster; and

a database in communication with said server, said database comprising data from said plurality of medical devices;

wherein said listener/pollster transmits requests to and receives data from said plurality of medical devices through said second data access point and passes requests to and data from said dedicated medical device application program, wherein said dedicated medical device application program passes data to and receives data from said database.

A3.

# TABLE OF CONTENTS

I. STATEMENT OF THE ISSUE ................................................................. 1

II. STATEMENT OF THE CASE ............................................................... 1

III. STATEMENT OF THE FACTS ........................................................... 2

    A.    The Claimed Invention: A Network Monitoring System For Medical Devices ............................................................................................ 2

    B.    The Prior Art ................................................................................... 3

        1.  Van Oostrom ........................................................................... 3

        2. Kerr ........................................................................................... 5

        3. Ortiz ......................................................................................... 7

    C.  The Examiner's Rejection ............................................................. 7

    D.  The Board's Affirmance of the Obviousness Rejection ................. 10

IV.    SUMMARY OF THE ARGUMENT ....................................................... 12

V.    ARGUMENT ..................................................................................... 13

    A.    The Standard of Review ................................................................ 13

    B.    The Board Correctly Affirmed the Obviousness Rejection ..... 14

        1. Substantial Evidence Supports the Findings that van Oostrom, Kerr and Ortiz Teach the Limitations  of Claim  17 .................................................................................. 14

        2. Combining the References Does Not Render van Oostrom Inoperable ................................................................................. 17

            a.     van Oostrom Discloses a "Server" as Claimed ... 18

i

        b.    Unit 10 of van Oostrom is not Rendered
Superflous ....................................................................... 19

        c.    "Network Access Point" is Taught by the Prior
            Art .......................................................................... 21

   3.  The Obviousness Rejection Comports With Case Law and
      is Not Hindsight Driven ................................................. 23


VI.  Conclusion ............................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)...............................................13

*Dystar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick*,
    464 F.3d 1356 (Fed. Cir. 2006) .........................................................16

*Ex parte Frye*, Appeal No. 2009-006013, 2010 WL 889747
    (BPAI Feb. 26, 2010) ......................................................................13

*In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359 (Fed. Cir. 2004).....................14

*In re Etter,* 756 F.2d 852 (Fed. Cir. 1985)...........................................................17

*In re Fritch*, 972 F.2d 1260  (Fed. Cir. 1992)......................................................20

*In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000)...................................................13

*In re Jolley*, 308 F.3d 1317 (Fed. Cir. 2002) ......................................................14

*In re Jung*, 637 F.3d 1356 (Fed. Cir. 2011) ........................................................13

*In re Morris*, 127 F.3d 1048  (Fed. Cir. 1997) ....................................................21

*KSR Int'l Co.* v. *Teleflex, Inc.,* 550 U.S. 398 (2007) ............................. 10, 16, 24

*In re Morris*, 127 F.3d 1048 (Fed. Cir. 1997).....................................................14

*Para-Ordnance Mfg. v. SGS Importers Int'l,* 73 F.3d 1085 (Fed. Cir. 1995).....13

*United States* v. *Adams,* 383 U.S. 39 (1966) ......................................................10

**Statutes**

35 U.S.C. § 103................................................................................................ 2, 14

5 U.S.C. § 706(2)(E) ...........................................................................................13

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal in connection with this case that has previously been before this Court or that is currently pending in any other court.  The Director is also unaware of any other case pending in this or any other court that will directly affect, or be directly affected by, the Court's decision in this appeal.

## I.   STATEMENT OF THE ISSUE

The claims at appeal are directed to basic elements of a network monitoring system infrastructure. Specifically, claim 17 is directed to a system for monitoring a variety of medical devices by having multiple network access points which allow the devices to be in communication with the network and a server. Van Oostrom discloses a similar system in which medical monitors and devices communicate with a data acquisition and control unit. The data acquisition and control unit includes a data management system for storing and retrieving data from the devices. Kerr also discloses a system for collecting and transmitting medical and health related data from measuring devices and his transmissions are done over a network. Ortiz shows that it is notoriously old and well-known in the art to utilize a network access point such as a router or modem in order to allow communication between a server and a network.

The primary issue on appeal is whether it would have been obvious to modify the communication system of van Oostrom to include network access points, as shown by Kerr and Ortiz, in order to allow the medical devices and server to communicate over a network.

## II.   STATEMENT OF THE CASE

Appellants Biondi and Frand (collectively "Biondi") filed the instant application entitled, "Network Monitoring Systems For Medical Devices," on

1

November 8, 2004, as a continuation to parent application no. 09/791,334 (which issued as U.S. Patent No. 6,839,753), filed on February 23, 2001. A31-68[1]. The Examiner rejected claims 17-40 as obvious under 35 U.S.C. § 103, and the Board of Patent Appeals and Interferences ("Board") affirmed. A307-322; A1-A25.

## III.    STATEMENT OF THE FACTS

### A.    The Claimed Invention: A Network Monitoring System For Medical Devices

Biondi's claimed invention is a remote medical monitoring system, in which medical devices communicate with a server via a network. A33(¶1[2]).  Of the twelve pages of detailed description provided (A34-A46), only one full page (A35) and one additional paragraph (A36, ¶1), is dedicated to the claimed network infrastructure. Accordingly, only Figures 1 and 2 show the elements of the monitoring system (A398-99), while the bulk of the figures (A401-09) show flow charts and screen shots.

The elements of Biondi's system can be seen in Figure 1, shown on the next page, which is a basic block diagram. A410.

---

[1] References to the Joint Appendix are made by "A___" and to Biondi's brief by "Br. at ___."

[2] Since Biondi's written description does not include numbered paragraphs, the paragraph refers to the paragraph on the cited page, and is not cumulative.

2



FIG. 1

In operation, a medical device, such as a ventilator 20 collects data from a patient. The ventilator 20 is connected to a network access point 26, which communicates with a network 30. The server 36 is also in communication with the network 30 through a second network access point 26'. Server 36 requests data from the ventilator 20 and the received data is stored in database 44 and accessed by a user through browser 28. A35-36. Representative claim 17 focuses on the individual components of the system and does not specify the layout of the network or the point at which data is converted for transmission over the network. A3.

## B.    The Prior Art

### 1.    Van Oostrom

Much like Biondi, van Oostrom realized the benefits of exploiting computer technology to interactively communicate between medical devices and

a remote location. A621 (Col. 1, ll. 35-45). Specifically, van Oostrom describes

a system in which several different physiologic monitors or therapeutic devices

communicate back and forth with a data acquisition and control unit. See, *e.g.*

A624 (Col. 7, ll. 19-35). Figure 1 depicts the system. A606.



Medical monitors 50 and therapeutic devices 60 are connected to a data

acquisition and control unit 10.  Van Oostrom recognized that the way that data

is transmitted varies from device to device. A623 (Col. 5, ll. 42-48).

Accordingly, van Oostrom teaches that control unit 10 can communicate with

each of the devices and their unique hardware communication protocol, software

communication protocol and data requirements. A622 (Col. 4, ll. 58-65). The

data from a device is accessed, stored, and analyzed and stored by unit 10 before

4

being forwarded to a central station, if requested. A624 (Col. 7, ll. 20-24). Thus, in operation van Oostrom is performing the same steps as Biondi: providing data from the medical devices to the control unit and then storing that data to be accessed at a remote location. A622 (Col. 3, ll. 44-57).

As recognized by the Board, the data acquisition and control unit 10 of van Oostrom has functionality beyond data conversion including a data management system. A5, FF 4-5; A624 (Col. 7, ll. 36-65). The data management system described for unit 10 is responsible for storing, requesting, and retrieving measured data from the medical devices which is then passed to other systems in a network via an external communication system. A6, FF 8-10. The data acquisition and control unit may be directly or remotely connected to a central office or care center for reporting, storing, and controlling the attached devices. A624 (Col. 7, l. 66 to Col. 8, l. 15). The data may be transmitted to a central station or other location as desired. *Id.* (Col. 8, ll. 8-16).

## 2.    Kerr

Kerr recognizes the advantages of utilizing a network to transmit data directly from medical devices. The fundamental aspects of the system are shown in Figure 3 below, and include measuring devices, an integration system coupled to the measuring devices, and a communications system (which may be

combined with the integration system) connected to a remote system by a network. A635; A636 (Col. 1, ll. 49-58); A637 (Col. 2, 1. 8).



FIG. 3

Upon receiving data from the measuring devices via the integration system, the communication system formats the data for transmission over a network. Id. (Col. 4, ll. 31-34). Finally, a remote system is adapted to receive the data transmitted from the communication system over the network, where it is inserted into a database. A638, (Col. 5, ll. 34-50).

6

### 3.    Ortiz

Ortiz shows a network access point (Fig. 8) in communication with a server. A649. Specifically, Ortiz discloses a communication gateway, which may be configured as an access point for a Local Area Network ("LAN"), through which data may enter or exit a communications network. A649 (Fig. 8); A669 (par. [0098] lines 1-11; par. [0099] lines 1-6; par. [0100] lines 1-8).

### C.    The Examiner's Rejection

The Examiner provided a detailed analysis of how each of the claimed limitations is met by the prior art. A488-506; A307-322. As described by the Examiner, van Oostrom describes the same basic components recited in Biondi's claims. the only modification to van Oostrom made was a replacement of a network comprising direct connection by wires of a plurality of medical devices to a server with a network comprising Internet or wireless LAN connecting a plurality of medical devices to a server. A310. Below is a claim chart showing explicitly how the combination of the references meets each claim limitation, as detailed by the Examiner. A492-4.

| Claim Limitation | Prior Art (vO=van Oostrom, K= Kerr, Or = Ortiz) |
| --- | --- |
| A plurality of medical devices, | medical treatment devices (60) and medical monitoring devices (50)  **vO** (A606) |
| wherein at least two of said medical devices are heterogeneous types; | described at col. 1, lines 48-56  **vO** (A621) |

| | |
|---|---|
| said medical devices having data; | described at col. 1, lines 20-25 and 42-43<br>**vO**(A621) |
| a first network access point in communication with one of said plurality of medical devices, | integration and communications system (Fig.3; col. 1, lines 53-57; col. 4 lines 25-27)<br>**K**(A633; A636; A637) |
| said first network access point passing requests to and receiving data from said one of said plurality of medical devices; | described at col. 2, lines 48-52; col. 2, line 64 - col. 3, line 2<br>**K**(A636-7) |
| a network in communication with said first network access point; | Internet (WAN) or Wireless LAN (col. 2, line 51; col. 4, lines 33-38; col. 4, line 59 to col. 5, line 15; Fig. 3)<br>**K**(A636; A637; A637-8; A635) |
| a second network access point in communication with said network; | communication gateway 124 (para. [0099]<br>**Or**(A669) |
| a server in communication with said second access point, said server comprising: | described in para. [0099] and [0100]<br>**Or**(A669) |
| a dedicated medical device application program for each type of said heterogeneous medical device; | data acquisition and control unit 10, having software coding defined as a Device Specific Operation Module (DevSOM) for each device containing the methods that are specific to a monitor or therapeutic device (col. 6, lines 38-39; col. 7, lines 13-15; col. 8, line 67 to col. 9, line 7; col. 9 lines 55-58)<br>**vO**(A606; A623; A624; A624-5; A625) |
| a listener/pollster; and | devsomGetData (610) and devsomPoll (640) function<br>**vO**(A625) |
| a database in communication with said server, | data table that is stored in temporary storage (col. 10, lines 57-65)<br>**vO**(A625) |
| said database comprising data from | described at col. 3, line 56; col. 6, lines |

8

| said plurality of medical devices; | 37-38; col. 7, lines 34-35; col. 10,line 66 to col. 11, line 6 **vO**(A622; A623; A624; A625-6) |
|---|---|
| wherein said listener/pollster transmits requests to and receives data from said plurality of medical devices through said second access point and | Example 1 (col. 12, lines 18-24) Example 2 (col. 12, lines 56-61) **vO**(A626) |
| passes requests to and data from said dedicated medical device application program | communication gateway 124 (para. [0099] **Or**(A669) |
| wherein said dedicated medical device program passes data to and receives data from said database | described at col. 10, line 66 to col. 11, line 6; col. 12, lines 21-24 and lines 60-61 **vO**(A625-6; A626) |

As explained by the Examiner, it would have been obvious to modify the system of van Oostrom by having a first network access point in communication with one of the plurality of medical devices, "in order to replace direct connection such as attachment by wires of a plurality of medical devices to a server by transmitting medical and health-related data to the server over a network such as Internet or wireless LAN (col. 1 lines 49-50 in Kerr)." A494. The purpose of van Oostrom's system, as recognized by the Examiner, is to "provide a way to efficiently connect to the various devices, regardless of manufacturer and/or communication protocol parameter settings, " A502 (citing A621, Col. 2, ll. 38-41). Replacing van Oostrom's choice of communication medium fully preserves the function of van Oostrom in light of Kerr, "wherein a

serial data signal from a medical device is converted into a second signal for transmission over the Internet." A502 (citing A631, abstract).

### D.    The Board's Affirmance of the Obviousness Rejection

The Board affirmed the rejections of all of the pending claims under 35 U.S.C. § 103(a).  *See* A17-18.  The Board first made a series of fact finding regarding the prior art teachings that echoed the Examiner's findings. See A4-A8 (FF 1-16). In the Board's words, the combination of van Oostrom, Kerr and Ortiz is "merely the substitution of one element (i.e., communication using a network and associated network access points) for another (the communication between van Oostrom's medical devices and data acquisition and control unit) known in the field." A13; *KSR Int'l Co.* v. *Teleflex, Inc.,* 550 U.S. 398, 416 (2007) (citing *United States* v. *Adams,* 383 U.S. 39, 50-51 (1966)). As the Board observed, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." A13, quoting *KSR*, 550 U.S. at 416.

The Board addressed Biondi's arguments challenging the obviousness rejection.  First, it rejected Biondi's argument that the modification of van Oostrom would render it inoperable.  The Board found this argument was contingent on a narrow meaning of "network access point" which was not supported by Biondi's written description. A10. Therefore the Board found that,

contrary to Appellants' arguments, the modification of van Oostrom in view of Kerr and Ortiz "does not require data protocol conversion but requires a first and second point at which a network can be accessed." A11.

Second, the Board found that the rejection did not rely on improper hindsight reasoning. On the contrary, the rejection was proper because it took into account only knowledge which was within the level of ordinary skill at the time the claimed invention was made. A13.

Third, the Board was unconvinced by Biondi's argument that van Oostrom's data and acquisition unit is not a "server" as claimed. A14. Rather, it found that "van Oostrom's data acquisition and control unit provides services to other computers in a network since it includes a data management system (DMS) which is responsible for storing and retrieving measured data which is passed to other systems (e.g., central station, central office) in a network via the External Communication System communicating over network adapters." A14 (citing FF 7).

The remaining issues discussed by the Board were not raised by Biondi's opening brief to this Court and therefore are not relevant to this appeal. Judge Gonsalves filed a dissenting opinion, premised on his belief that the rejection requires moving the control unit of van Oostrom to the other side of the network. A19-22.

11

## IV.   SUMMARY OF THE ARGUMENT

Biondi broadly claims a system for medical devices that monitors and collects data, and transmits, through a network, the data to a central monitoring station. The system includes a plurality of medical devices connected to a network access point that communicates with a network. A server, executing an application program, is also in communication with the network through a second network access point. Van Oostrom discloses a very similar medical monitoring system, which has all the recited limitations of representative claim 17 except that claim 17 requires communication over a network through network access points. Such a mode of communication, however is fully disclosed by Kerr and Ortiz.  Instead of rendering van Oostrom's system inoperable, the substitution of Kerr's and Ortiz's network connections is merely substituting one communication method for another, and thus obvious.

Substantial evidence thus supports the Board's finding that a person of ordinary skill in the art would have been motivated to substitute the communication between van Oostrom's medical devices and data acquisition and control unit, with Kerr's and Ortiz's teaching of using a network and associated network access point in similar systems. Given the conceptual breadth of Biondi's claims, his detailed deconstruction of van Oostrom's teachings are of no moment.

## V.   ARGUMENT

### A.   **Standard of Review**

Whether an invention would have been obvious is a legal question based on underlying findings of fact.  *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000).[3]  What a reference teaches is a question of fact.  *Para-Ordnance Mfg. v. SGS Importers Int'l*, 73 F.3d 1085, 1088 (Fed. Cir. 1995).  Whether a person of ordinary skill in the art would have been motivated by the prior art to arrive at the claimed invention is also a question of fact.  *Gartside*, 203 F.3d at 1316.

The Court upholds fact findings made by the Board that are supported by substantial evidence, 5 U.S.C. § 706(2)(E), and reviews the Board's legal conclusions *de novo*, *Gartside*, 203 F.3d at 1315-16.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Where "two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the

---

[3] Biondi's contention that the Board failed to make a *prima facie* case (Br. at 27) misstates the law. The Board reviews the Examiner's rejections "based upon the issues identified by appellant, and in light of the arguments and evidence produced thereon." *Ex parte Frye*, Appeal No. 2009-006013, at 9-10, 2010 WL 889747 (BPAI Feb. 26, 2010); *In re Jung*, 637 F.3d 1356, 1365-66 (Fed. Cir. 2011).

other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

During prosecution, claims are given their broadest reasonable interpretation consistent with the written description, which this Court reviews to determine whether it is reasonable in light of all the evidence before the Board. *In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997); *see also In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004).

### B.    The Board Correctly Affirmed the Obviousness Rejection

#### 1.    Substantial Evidence Supports the Findings that van Oostrom, Kerr, and Ortiz Teach the Limitations of Claim 17

A claimed invention is unpatentable if the differences between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). Representative claim 17 reflects basic components of a data monitoring system. Modern medical devices have microprocessors which generate and store data. The data is then transmitted to a server, which collects the data. Van Oostrom teaches the exact same concept reflected in claim 17. In van Oostrom, medical monitors 50 and therapeutic devices 60 generate patient data. A5 (FF 4); A492-93; A622 (Col. 4, ll. 61-65); A624 (Col. 7, ll. 19-35). That data is transmitted to data acquisition and control unit 10, which has a

14

related database for storage. Indeed both van Oostrom and Biondi describe the problems each seeks to solve for these types of medical data monitoring systems and the architecture for implementing the solutions in strikingly similar terms. *Compare* A32-33 (Biondi, stating the desire to improve remote monitoring by harmonizing heterogeneous devices) with A621-22 (van Oostrom, stating the desire to improve medical monitoring by coordinating data between multiple monitors and/or therapeutic devices).

The only difference between the two systems is the type of connections that each discloses employing to transmit data between the medical devices and the server. Van Oostrom generally describes serial connections—a physical, hardware connection between the two components. *See, e.g.*, A624 (Col. 7, ll. 20-26); A493. Claim 17 employs network connections, such as wireless Ethernet networks, reflected in the "first" and "second network access point[s]." *See* A35 (¶1 and 3); A493. But claim 17 is not patentable simply by employing known system components for known and predictable uses, but using a different and well-known communications technology to carry it out.

The Board correctly affirmed the Examiner's finding that Kerr supplements van Oostrom in the art of medical device monitoring systems with its disclosure evidencing that it is well known to use a network for communications between medical devices and a central server. Moreover,

15

Kerr's server provides services, particularly access to medical device data in a database, to other computers over the Internet via a web portal. A9; A493-94. Ortiz proves that network access points are well-known in order to connect to a server. Similarly, the Board and Examiner correctly found that a person of ordinary skill in the art would have been motivated to modify van Oostrom's system by including network access points taught by Kerr and Ortiz to enable transmitting data from medical devices over a network. *See* A10-13; A494. As the Board aptly observed, "the combination of van Oostrom, Kerr and Ortiz is merely the substitution of one element (i.e., communication using a network and associated network access points) for another (the communication between van Oostrom's medical devices and data acquisition and control unit) known in the field." A13, citing to *KSR Int'l Co.* v. *Teleflex, Inc.,* 550 U.S. 398, 416 (2007). The combination represents an improvement to van Oostrom by utilizing network technology to modernize van Oostrom's system and making it more adaptable to different configurations. Therefore, in addition to the motivation provided by the references, there is an implicit motivation to modify van Oostrom with the teachings of Kerr. *See Dystar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick*, 464 F.3d 1356, 1368 (Fed. Cir. 2006) (Implicit motivation to combine exists not only when a suggestion may be gleaned from the prior art as a whole, but when the combination of references results in a

product or process that is more desirable.). Accordingly, substantial evidence supports the Board's findings and conclusion that representative claim 17 would have been obvious over the prior art.

### 2. Combining the References Does Not Render van Oostrom Inoperable

Biondi's primary challenge to the obviousness rejection is that combining the teaching of van Oostrom and Kerr would impermissibly destroy van Oostrom's principle of operation. Br. at 28-33. This argument is incorrect, because the purpose and functionality of van Oostrom is fully preserved by replacing serial connections with network connections. *See* A502-03

Additionally, Biondi's argument based on the incompatibility of the structures of van Oostrom and Kerr appears premised on an incorrect view of the law. Any alleged rearranging of the elements of the network, as suggested by Biondi (Br. at 18-19), is irrelevant to the Board's determination since it is well-established that a determination of obviousness based on teachings from multiple references does not require an actual, physical substitution of elements. *In re Etter,* 756 F.2d 852, 859 (Fed. Cir. 1985) (en banc) ("Etter's assertions that Azure cannot be incorporated in Ambrosio are basically irrelevant, the criterion being not whether the references could be physically combined but whether the claimed inventions are rendered obvious by the teachings of the prior art as a

17

whole."). Here, the proper inquiry is whether it would be obvious to use a network to communicate between a server and multiple medical devices. As explained above, the answer is yes.

### a)   van Oostrom Discloses a "Server" as Claimed

Biondi argues that unit 10 is not a "server" as that term is used in claim 17 because the purpose of van Oostrom's data acquisition unit "is to collect and format data for transmission." Br. at 31 and 35.[4] However, there is no reason to characterize the role or purpose of unit 10 so narrowly. As the Board recognized, this characterization of van Oostrom's data acquisition and control unit as merely a network node and not a server does not comport with van Oostrom's disclosure. A14. The Board correctly found that consistent with the Examiner's findings "van Oostrom's data acquisition and control unit provides services to other computers in a network since it includes a data management system (DMS) which is responsible for storing and retrieving measured data

---

[4] While Biondi couches its appeal argument as one of claim construction, he really only repeats his argument from below that van Oostrom's unit 10 does not meet the "server" limitation. A433-34. Fairly read, the Board actually analyzed the rejection using the definition offered by Biondi. The Board first noted Biondi's definition. A14 ("Appellants define a server as a computer in a network that is used to provide services (such as access to files or shared peripherals or the routing of e-mail) to other computers in the network.")(citing A433-34). The Board then reasoned that, based on the Examiner's finding, van Oostrom satisfied that term, rejecting Biondi's contrary characterization of the reference. A14. Thus, Biondi's attempt to repackage its disclosure-based argument regarding van Oostrom as one of claim construction should be rejected.

which is passed to other systems (e.g., central station, central office) in a network via the External Communication System communicating over network adapters." A14; A502.

Van Oostrom states that the data acquisition unit performs other functions in furtherance of the goal of providing a way to efficiently collect, and make accessible, medical data. Substantial evidence supports that finding. In particular, unit 10 runs the software that monitors the connected medical devices (*see, e.g.*, A6, FF 8(citing the DevSOM module discussed in van Oostrom); A492 (same)) and specifically requests/polls the devices for data (*see, e.g.*, A6, FF 9-10 (citing the teachings in van Oostrom satisfying the "listener/pollster" element of the recited "server"); A492 (same)). As those are the only limitations affirmatively recited in claim 17 for the "server," relying on van Oostrom's unit 10 for the obviousness rejection was decidedly correct.

### b) Unit 10 of Van Oostrom is not Rendered Superfluous

Biondi argues that modifying van Oostrom to include a network access point renders unit 10 "superfluous" because both the network access point and unit 10 perform protocol conversion. Br. at 32. However, unit 10 performs a variety of additional functions and relying on unit 10 for some, but not all, of its purposes does not render the unit "superfluous." *See In re Fritch*, 972 F.2d

1260, 1264 (Fed. Cir. 1992) ("It is well settled that a prior art reference is relevant for all it teaches to those of ordinary skill in the art."). Similarly, Biondi's insistence that there "would be no need" for the data acquisition unit if it does not perform any data protocol conversion (Br. at 32-33) continues to rely on his narrow view of van Oostrom's teachings.

Biondi repeatedly states that the combination of van Oostrom and Kerr requires one to physically move the data acquisition unit to the "other side of the network." Br. at 31. Biondi asserts that doing so would prevent the medical devices from connecting to the network because the data acquisition unit performs the function of formatting the data, and thus van Oostrom's system would not work. *See* Br. at 29. But Biondi points to nothing to support his assertion; he simply assumes that the type of formatting that van Oostrom describes as being performed by his unit 10 would be necessary to implement the same system over a network. Biondi cites to no evidence to demonstrate that conclusion and it does not seem to bear out. Indeed, the type of conversion described by van Oostrom appears specific to serial connections, suggesting that it has no bearing on implementing the same components over a network. *See, e.g.*, A623 (col. 6, l. 1-57) (describing the typical protocols specific to hardware communications protocols such as R232); A621 (describing R232 as a typical "serial" connection.) As the Board recognized, one or ordinary skill in the art

20

would realize that the teachings of van Oostrom are not limited to collecting data over serial lines. A12.

### c) "Network Access Point" is Taught by the Prior Art

More generally, claim 17 itself says nothing about requiring protocol conversion. Biondi again attempts to avoid the prior art by arguing "network access point" requires conversion of serial data from the medical device into a network protocol. Br. at 36. As recognized by the Board, the written description does not include sufficient support for the asserted narrow meaning for a network access point. A10.

During prosecution, the broadest reasonable meaning is applied to claim terms according to their ordinary usage as they would be understood by those with ordinary skill in the art while taking into account definitions found in the written description. *In re Morris*, 127 F.3d 1048, 1054 (Fed. Cir. 1997). Nowhere does Biondi argue that a "network access point" has a particular meaning as understood by those with ordinary skill in the art. Viewing the Written description reveals that Biondi does not view "network access point" as being a term of art due to the fact that Biondi does not even consistently use the term "network access point" in the written description. *See, e.g.* A36, ¶ 1 (where Biondi refers to 26 as a network access "**device**.")

In the Written description, Biondi discloses that a medical device 20 is "connected to a network access device 26" which "communicates with a network." A35, ¶1. The server 36 is described as being in communication with the network through network access point 26'. *Id.* While further functionality regarding data conversion is later attributed to the network access points in the Written description (A35, ¶4-A36, ¶1), this functionality is <u>not</u> in claim 17. Therefore, as found by the Board, "the broadest reasonable meaning for a 'network access point' consistent with the Specification includes the literal meaning of the term, a point at which a network can be accessed and does not necessarily require a specific data protocol conversion." A11. As a result, "the modification of van Oostrom in view of Kerr and Ortiz to include a network and corresponding network access points in place of van Oostrom's communication between the medical devices and data acquisition and control unit does not require data protocol conversion but requires a first and second point at which a network can be accessed." *Id.*

Even if Biondi is correct that claim 17 somehow requires protocol conversion, the claim is still unpatentable because it is taught by the prior art. Biondi's own brief acknowledges that "Kerr <u>and</u> Ortiz disclose that network access points convert data to a network protocol." Br. at 36-37 (emphasis added). And Biondi is correct. *See, e.g.*, A637 (col. 3, ll. 42-48; col. 4, ll. 30-47)

(Kerr). If, as the Board and Examiner reasoned, the sole modification to van Oostrom is to replace the existing connections with the network access points taught by Kerr and Ortiz, any necessary protocol conversions would seemingly be part and parcel with the substitution.

### 3.    The Obviousness Rejection Comports With Case Law and is Not Hindsight Driven

Biondi contends that one of ordinary skill in art would have not considered "completely destroying van Oostrom's functionality as proposed by the Board majority. The only motivation to reconfigure van Oostrom's teachings comes from Appellants' own claims." Br. at 33.  Biondi's contention is in error.

As discussed above, the premise of Biondi's hindsight argument—that the rejection destroys van Oostrom's functionality—is fatally flawed. The relevant teachings from van Oostrom maintain their disclosed and relevant functionality if implemented over the network and associated network access points taught by Kerr and Ortiz. A502 (Examiner's observation that "the purpose and functionality of van Oostrom is fully preserved" by replacing serial connectors with network access points.). As the Board explained in rejecting Biondi's hindsight theory, "the combination of van Oostrom, Kerr and Ortiz is merely the substitution of one element (i.e., communication using a network and associated network access points) for another (the communication between van Oostrom's

23

medical devices and data acquisition and control unit) known in the field." A13, citing *KSR Int'l Co.* v. *Teleflex, Inc.,* 550 U.S. 398, 416 (2007). Last, the Examiner correctly found that the ordinary-skilled artisan would have been motivated to make the combination in order to achieve van Oostrom's functionality over a network such as the Internet or wireless LAN. A494-495.

## VI.   CONCLUSION

For the foregoing reasons, the Board's decision that representative claim 17 would have been obvious in view of the prior art is supported by substantial evidence and is correct as a matter of law.  This Court should affirm.

Respectfully submitted,


August 16, 2012                    _/s/ **MEREDITH H. SCHOENFELD**__

                                  RAYMOND T. CHEN
                                  Solicitor

                                  MEREDITH H. SCHOENFELD
                                  ROBERT J. MCMANUS
                                  Associate Solicitors

                                  Office of the Solicitor
                                  U.S. Patent and Trademark Office
                                  Mail Stop 8, P.O. Box 1450
                                  Alexandria, Virginia 22313

                                  *Attorneys for the Director of the*
                                  *United States Patent and*
                                  *Trademark Office*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of August, 2012, I electronically filed the foregoing  **BRIEF FOR APPELLEE DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE** using the Court's CM/ECF filing system.  Counsel for the Appellant was electronically served via e-mail per Fed. R. App. P. 25 and Fed. Cir. R. 25(a) and 25(b).


　/s/ **MEREDITH H. SCHOENFELD**
Associate Solicitor
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313-1450
(571) 272-9035